# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MOBILE HEALTHCARE FACILITIES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> AVANTE HEALTH SOLUTIONS, <br><br> Defendant, | Civil Action File <br> No.: 1:21-cv-4038-SEG |

## DEFENDANT AVANTE HEALTH SOLUTIONS'S UNDISPUTED STATEMENT OF MATERIAL FACTS

Sarah E. Trevino
Georgia Bar No. 660094
Sarah Hannah Phillips
Georgia Bar No. 302869

**DENTONS US LLP**
303 Peachtree St., NE, Suite 5300
Atlanta, Ga 30308
Telephone: 404-527-4000
E-mail: sarah.trevino@dentons.com
sarahhannah.phillips@dentons.com

Jason R. Scheiderer
(admitted *pro hac vice*)

**DENTONS US LLP**
4250 Main St., Suite 1100
Kansas City, Missouri 64111
Telephone: 816-460-2400
E-mail: jason.scheiderer@dentons.com

**TABLE OF CONTENTS**

I. UNDISPUTED MATERIAL FACTS ............................................................. 1

    A. The Parties ................................................................................................ 1

    B. MHF's Contract with the State of Texas .................................................. 3

    C. MHF Facilities Contacts Avante to Order Equipment .............................. 4

    D. Months Later, TDEM Drastically Changes the Scope of the Project. ..................................................................................................... 7

    E. MHF Still has in its Possession the Nine Beds and Thirty Six Ventilators And Has Done Nothing to Mitigate Any Claimed Damages. ................................................................................................. 11

    F. MHF Cannot Point to Any Actionable Misstatements Made by Avante ...................................................................................................... 12

Pursuant to Local Rule 56.1(B)(1), Defendant Avante Health Solutions ("Avante") respectfully submits the following statement of material facts to which it contends there is no genuine issue to be tried in support of its Motion for Summary Judgment filed this same day.  Avante makes these statements based on the facts drawn in the light most favorable to Plaintiff Mobile Healthcare Facilities, LLC ("MHF"), as taken primarily from MHF's documents and testimony. If this matter proceeds to a trial, Avante will produce other facts that contradict MHF's version of the facts.

## I. UNDISPUTED MATERIAL FACTS

**A. The Parties**

1. Plaintiff Mobile Health Facilities ("MHF") is a company that provides "mobile healthcare solutions."  (ECF 101, ¶ 1.)  MHF's core business is providing trailers for mobile healthcare facilities. (Dep. of Affeldt ("Affeldt Dep."), excerpts attached to Memorandum in Support of Motion for Summary Judgment as Exhibit A, 23:3-7.)

2. Over the past couple of years, MHF has provided facilities to a customer in Phoenix, Arizona; for the Tohono O'odhma Tribe; and for the Arapah-Sioux Tribe in Montana.  (*Id.*, 21:42-22:6, 22:17-22, 26:19-27:11.)

3.  It provides the "option" of a turnkey facility that contains medical equipment to 15-20% of its customers. (*Id.* 28:6-15). However, the subject facility—provided to TDEM—was the first critical care turnkey unit MHF has ever provided. (*Id.,* 83:13-84:1.)

4.  Kyle Affeldt is the CEO of MHF and Marlin Anderson is the CIO. (*Id.*, 54:11-55:17).

5.  Mr. Affeldt is the sole person at MHF who designs the facilities. (*Id.*, 41:15-42:17.) He selects and purchases equipment based on his previous position as VP for a company that built mobile surgery facilities. (*Id,.* 42:8-17.)

6.  Mr. Affeldt has stated he is "very knowledgeable in all of the different types of medical requirements for facilities" and considers himself as having "expertise" in "all of the different types of medical requirements for facilities." (*Id.*)

7.  Mr. Affeldt testified that based on this expertise, he would never "hand that [decision] off to somebody that has very little experience in it." (*Id.)*

8.  Mr. Affeldt decides what equipment to buy through "internet searches" and through the advice of an independent medical consultant, Nurse Feist. (*Id.*, 34:16-20; 94:14-24.)

9. Avante is a medical equipment supplier, and provides the sale of ICU equipment, surgical equipment, and even veterinarian equipment. (*Id.,* 54:11-55:17.)

10. Misty Hampton is sales representative at Avante. (Dep. of Misty Hampton ("Hampton Dep."), excerpts attached to Memorandum in Support of Motion for Summary Judgment as Exhibit B, 14:13-14.).

11. Ms. Hampton provides consulting services in that she "provides [customers] with specifications, any sort of technical . . . terms from the manual" and can provide features if asked. (*Id.*, 178:9-18.)

12. Ms. Hampton provides customers with as much information provided to Avante from the manufacturer. (*Id.*).

13. Ms. Hampton does not hold herself out as an expert. (*Id.*, 186:18-20.) While she considers herself to have some knowledge in medical equipment she is not "an expert in ventilators." (*Id.*, 185:12-14.)

**B.     MHF's Contract with the State of Texas**

14. During the height of COVID-19, MHF began discussions with Colonel Coldwell of TDEM to supply Texas with mobile facilties. (Affeldt Dep., 18:17-19:8.)

15. During these discussions, MHF contends that TDEM told MHF "everything they wanted, medical equipment wise." (*Id.*, 36:19-37:5.) MHF admitted to TDEM that the equipment was dependent on "what was available at the time of purchase." (*Id.*, 37:1-5.)

16. On approximately August 25, 2020, Mobile Healthcare Facilities secured a $11.35 million contract with the State of Texas ("TDEM Contract") to set up mobile healthcare facilities to combat the COVID-19 pandemic. (*Id.*, Exhibit 65).

17. The equipment list for the TDEM Contract included: "(9) Styker II Refurbished Electrical Hospital Beds for $40,500" and "(9) TBD Ventillators [*sic*] for $144,000." (*Id.*, Ex. 67, p. 5.)

**C.    MHF Facilities Contacts Avante to Order Equipment.**

18. Mr. Affeldt began researching MHF's equipment needs in late August 2020. (Affeldt Dep., 39:10-19.)

19. MHF contacted Avante around August 25, 2020 in regard to ordering ultrasound systems as well as other equipment. (*Id.*, Ex. 64.)

20. On September 8, 2020, MHF requested a quote for "36 ea. Ventilators." (Hampton Dep., Ex. 4.)

21. Days later, Avante sent MHF Quote for, among other things, 36 Puritan Bennett PB840 Ventilators and 36 Avante Premio Plus E250 Hospital Beds. (*Id.*, Ex. 8.)

22. After Avante provided the initial quote, MHF provided Avante with a copy of the Purchase Order with Texas so Avante knew "this deal is real." (*Id.*, Ex. 9.)

23. MHF discussed the PB840 ventilators with an "outside consultant" and requested she verify if they were ICU complaint. (Affeldt Dep., 43:16-44:5; 44:12-18.)

24. On September 13, 2020, Ms. Hampton e-mailed MHF to notify them of the following: "Also, after speaking with our production director, we need to revise your quote to replace the PB840 vent with the Vivo 65 shown here: https://www.breas.com/products/vivo/vivo-65-usa/" (*Id.*, Ex. 66.)

25. MHF responded: "Is the reason current inventory? How does this ventilator compare to the PB840?" (*Id.*)

26. Ms. Hampton responded: "Finding 36 refurbished ventilators of the same model is very difficult due to the current pandemic. The Vivo 65 is new and also does not require an air compressor, like the PB840. You are saving money and providing a better quality product." (*Id.*)

27. MHF responded: "Excellent!" (*Id.*)

28. Neither MHF nor Mr. Affeldt did anything to independently verify the suitability of the Vivo 65 ventilators. (*Id.*, 95:16-20.)

29. Mr. Affeldt did no research to independently verify the suitability of the Vivo 65 ventilators. (*Id.*, 93:20-94.)

30. Mr. Affeldt did not speak to TDEM or Nurse Feist to independently verify the suitability of the Vivo 65 ventilators. (*Id.*, 94:14-24.)

31. Mr. Affledt never even asked Avante if the Vivo 65 could be used in an ICU setting. (*Id.*, 95:5-13)

32. After approval from MHF, Avante prepared an amended quote which included:

| SKU | DESCRIPTION |
|---|---|
| 40VIVO65N | BREAS VIVO 65 RESPIRATORY VENTILATOR |

| QTY | UOM | PRICE EACH | AMOUNT |
|---|---|---|---|
| 36.0000 | EA | 10,000.0000 | 360,000.000 |

(Hampton Dep., Ex. 21.)

33. MHF has testified that the entire agreement consists of the Quote/Purchase Order and Payment. (Affeldt Dep., 192:15-8) ("Q. Tell me, what are the documents that make up your agreement with Avante? A. Purchase order and

-6-

payment. Q. And those are the documents that comprise the contract? A. From my perspective, yes.").

34.     MHF has testified that it agreed to the terms of this new quote. (*Id.*, 193:13-17 ("Q. You agree, though, that the purchase order is for the Vivo 65, right? A. That was based on what they said was a better product than what I originally had in the original purchase order.")

35.     Ms. Hampton informed MHF that "the hospital beds [it] had ordered were no longer available. So [she] had provided [it] with options that [Avante] had in stock that could meet [MHF's] timeline." (Hampton Dep., 100:5-9.)

36.     In fact, Ms. Hampton provided MHF with internet hyperlinks to two beds Avante had in stock: (1) the Avante Premio M3 bed, and the Premio RB bed. (MHF001310, attached to Memorandum in Support of Motion for Summary Judgment as Exhibit C.)  MHF later selected the $2,000.00 Premio RB Patient Bed via telephone conversation.  (MHF001306, attached to Memorandum in Support of Motion for Summary Judgment as Exhibit D).

**D.     Months Later, TDEM Drastically Changes the Scope of the Project.**

37.     On November 14, 2020, MHF e-mailed to STRAC/TDEM the equipment list which contained the original purchase quote that had the beds listed

ats Stryker beds and the Ventilators as TBD. (Affeldt Dep., Ex. 67, p. 5.) It also contained the following updated information:

| Equipment | Vendor | Model | Link | Qty | | | Notes |
|---|---|---|---|---|---|---|---|
| Electrical Hospital Beds | Avante Health Solution | PREMO E250 | https://avantehs.com/p/avante-premio-e250-electric-hospital-bed/1516 | 36 | | X | Too Many and Too bulky to ship and then reship. To be shipped directly to Texas during set up |
| Ventilators | Avante Health Solution | BREAS VIVO 65 RESPIRATORY VENTILATOR | https://www.breas.com/products/vivo/vivo-65-usa/ | 36 | X | | Ship to BrewCo a week prior to Shipping to Texas |

(*Id.*, p. 8.)

38.  STRAC, mentioning nothing about the venitaltors or beds, listed items they wanted to swap out. (*Id.*, Ex. 69.) MHF's response was:

> Sara, . . . We understand the challenges TDEM has been under with all of the natural disasters (Hurricanes) and COVID-19 this fall and their manpower required to handle all of these emergencies. **However, this has made it difficult for us to receive the planning and direction we needed early on in this project. Not until this last week when your team came on-board, has there been the required focus on this project and communications with us so we can ensure the products meets your expectations.** However, we are up to the task of making the necessary adjustments to make it all work as quickly as possible without reducing the level of product quality.

(*Id.*, Ex. 68) (emphasis added).

39.  MHF admitted that TDEM had "**drastically change[d] the mission and scope of this project**," and

> **the sourcing of these pieces of equipment was never specific by TDEM.** All of these items were sourced and put onto a quote by Mobile Healthcare Facilities primarily as just a conveneince service to TDEM. [MHF] don't typically source this kind of equipment because it is also another way to quickly lose money. In adidtion to no

-8-

>specifications for the equipment, this project had another problem form the receipt of the Purchase Order.

(*Id.*, Ex. 69.)

40.　MHF admitted that this was when STRAC changed its mind and "wanted to use one of the manufacturers that it had experience with"—the Zoll ventilator. (*Id.*, 129:20-22.)

41.　Like the PB840, but unlike the Vivo 65, MHF actually conducted some diligence concerning the Zoll ventilator that STRAC desired. (*Id.*, 130:5-19.)

42.　At no point did STRAC say it wanted to change to a Zoll ventilator because it was approved or rated for use in an ICU. (*Id.*, 131:13-22.)  MHF began contacting Zoll to purchase their ventilators. (*Id.*, Ex. 71.)

43.　The next day, on November 20, 2020, MHF e-mailed Avante and told Avante "My customer does not like the following pieces of equipment that we purchased from you since they already have and use a different manufacturer for these types of units and only after all of this time tell me what." (*Id.*, Ex. 70, 140:5-18.)

44.　In an attempt to fix both MHF's and TDEM's lack of specifications and communication with each other, MHF tried to place the blame on Avante.

45. After having the publicly available hyperlink to the Vivo 65 website for two months, MHF finally read the link and notified Avante:

> I just went on the Bres website and it states "The device is intended to be used in home, institution, hospitals and portable applications such as wheelchairs and gurneys. It may be used for both invasive and non-invasive ventilation. The Vivo 65 is not intended to be used as a transport or critical care ventilator. Therefore, it is TRUE!

(*Id.*, Ex. 73.)

46. True to form, MHF shows zero honesty when ordering products or making changes.

47. As example, on December 7, 2020, Joe Palfini of TDEM asked MHF "How much would it be to add two invasive blood pressure modules and an end tidal $CO_2$ with cables for each of the nine monitors in each trailer?" (MHF000509, attached to Memorandum in Support of Motion for Summary Judgment as Exhibit E.)

48. Rather than make that change order, MHF, very dishonestly, then e-mailed Avante stating that MHF was "What also just came to my attention, you also sold me the wrong patient monitors. What we were to also have are the monitors that also have two invasive blood pressure modules and an end tidal $Co_2$ module with cables"—knowing full well that TDEM changed its mind and MHF ordered the

-10-

wrong one. (MHF000660, attached to Memorandum in Support of Motion for Summary Judgment as Exhibit F.)

**E.     MHF Still has in its Possession the Nine Beds and Thirty Six Ventilators And Has Done Nothing to Mitigate Any Claimed Damages.**

49.    Although MHF states that it initially rejected the first twenty-seven beds it received, it accepted a second shipment of nine beds. (Affeldt Dep., 74:17-22; 75:9-15.)

50.    Because MHF believes "showing potential customers past successful projects is a good way to earn business," it unpacked, and promoted those nine beds on its website. (*Id.*, 206:19-207:9.)

51.    In fact, as of today, those are still in MHF's possession and still being promoted on its website. (*Id.*, Ex. 80, p. 4.)

52.    Although MHF testified that it never put those beds in its facilities, when confronted with their website photographs, MHF stated "I said we never used them" (*Id.*, 211:14-24.) MHF admitted they set the beds up as a display, and took photos to promote on their website. (*Id.*, 212:2-19.)

53.    MHF admits that although they are attempting to recover damages for the ventilators, it still has the ventilators in its possession. (*Id.*, 151:18-152:10.)

54. MHF has done nothing to mitigate any alleged damages. It never attempted to sell the ventilators. (*Id.*, 151:18-21.)

55. Nor did MHF ever attempt to donate the ventilators during the height of COVID-19 when hundreds of thousands of people were dying throughout the world due to, in part, a critical shortage of ventilators. (*Id.*, 152:8-10.)

F. **MHF Cannot Point to Any Actionable Misstatements Made by Avante.**

56. In its Complaint, and Second Amended Complaint, MHF relies on the following statements in support of its fraud and negligent misrepresentation claims:

> a) Avente [sic] would supply MHF with critical care grade ventilators for use in ICU settings;
> b) That the Vivo 65 ventilators were better for MHF's objectives and needs than the PB840 ventilators;
> c) That Avante would deliver Avante Premio Plus E250 Electric Hospital Beds pursuant to the order placed by MHF; and
> d) That the ventilators provided would perform to the use intended and required by MHF specifically, for critical care patients.

Dkt. 1-1, ¶ 43.

In its Interrogatory responses, MHF contended that

[D]uring a phone conversation with Avante, Kyle Affeldt, Plaintiff's CEO, detailed to Avante the specific needs of Plaintiff for certain medical equipment, including the customer Plaintiff was serving (i.e., Texas Division of Emergency Management) and the location and use for the medical equipment (i.e., for critical care use in a mobile ICU setting). **Avante assured Mr. Affeldt that they fully understood the needs and requirements of Plaintiff in fulfilling this order for use in a mobile ICU setting.** Plaintiff also provided Avante with written

-12-

documentation detailing its current contract for medical equipment for ICU facilities with the Texas Division of Emergency Management. Additionally, Mr. Affeldt communicated with Avante's CEO directly about Plaintiff's needs, products offered by Avante, and discussed specifically Plaintiff's current needs in fulfilling the contract with the Texas Division of Emergency Management. The contents of these communications, and others, as acknowledged by Avante, made clear that Plaintiff required medical equipment, including ventilators, suitable for critical care use and fitness in an ICU setting.

(*Id.*, Ex. 63.)

57. However, at its deposition, MHF testified that

   a) It could not recall anyone at Avante saying "I'm an expert" (*Id.*, 57:3-18, 57:15-18) ("I can't recall [Avante] actually saying "Oh, I'm an expert.")
   b) It could not recall "any human being at Avante saying that Avante has expertise in the area of providing critical care equipment (*Id.*, 58:7-11);
   c) Avante did **not** state "I fully understand the needs and requirements of MHF" as alleged. (*Id.,* 59:18-60:2.);
   d) When asked to separate what MHF thought people **should have known** versus what was actually stated to him, he admitted that he did not know exactly what Avante told him concerning the contract or the products. (*Id.*, 60:21-61:19);
   e) That there exists no communication in MHF specifically asked "can this be used in an ICU," (*Id.*, 64:2-8);
   f) The only thing Avante represented was that "Finding 36 refurbished ventilators of the same model is very difficult due to the current pandemic. The Vivo 65 is new and also does not require an air compressor, like the PB840. You are saving money and providing a better quality product" (*Id.*, Ex. 66; 64:16-18);
   g) MHF never asked if the Vivo was approved in the ICU, and Avante never stated it was. (*Id.*, 65:22-66:2.)

Respectfully submitted this 21st day of October, 2022.

/s/ *Sarah Trevino*
Sarah E. Trevino
Georgia Bar No. 660094
Sarah Hannah Phillips
Georgia Bar No. 302869
**DENTONS US LLP**
303 Peachtree St., NE, Suite 5300
Atlanta, Ga 30308
Telephone: 404-527-4000
E-mail:
sarahhannah.phillips@dentons.com
Jason R. Scheiderer
(admitted *pro hac vice*)
**DENTONS US LLP**
4250 Main St., Suite 1100
Kansas City, Missouri 64111
Telephone: 816-460-2400
E-mail: Jason.scheiderer@dentons.com
*Counsel for Defendant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia, that the foregoing **DEFENDANT AVANTE HEALTH SOLUTIONS'S STATEMENT OF UNDISPUTED MATERIAL FACT** complies with the font and point selections approved by this court in L.R. 5.1B. This pleading was prepared using 14-point Times New Roman Font.

/s/ *Sarah Trevino*
Sarah E. Trevino
Georgia Bar No. 660094

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **DEFENDANT AVANTE HEALTH SOLUTIONS' STATEMENT OF UNDISPUTED MATERIAL FACT** was filed on October 21, 2022 via the Court's ECF electronic filing system and will notify all participating registered users as follows:

>Brian S. Goldberg
>Leo Kogan
>FREEMAN MATHIS & GARY, LLP
>100 Galleria Parkway
>Suite 1600
>Atlanta, Georgia 30339
>E-mail: bgoldberg@fmglaw.com
>lkogan@fmglaw.com
>
>Alan C. Manheim
>25 Alexander Street
>Suite 3
>Marietta, Georgia 30060
>E-mail: alan@acmlaw.net

>*/s/ Sarah Trevino*
>Sarah Trevino
>Georgia Bar No. 660094