UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MOBILE HEALTHCARE FACILITIES LLC, ) ) ) Plaintiff, ) ) v. ) ) AVANTE HEALTH SOLUTIONS, ) ) Defendant. ) | CASE NO. 1:21-cv-04038-SEG |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW Plaintiff Mobile Healthcare Facilities, LLC ("Plaintiff"), by and through its undersigned counsel, and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this, its *Motion for Partial Summary Judgment and Memorandum of Law in Support* ("Motion"), showing the Court as follow:

### INTRODUCTION

Plaintiff MHF is a longtime provider of mobile ICU facilities. As the COVID-19 Pandemic swept through the country in 2020, MHF determined that it must be a part of the global mission to help those affected. In furtherance of that mission, MHF contracted with the Texas Department Emergency Management to provide turnkey mobile ICU facilities to treat severely COVID-19 patients. To that end, MHF reached out to Defendant Avante and identified its needs: thirty-six (36) ventilators

and thirty-six (36) hospital beds for mobile ICU facilities . Originally, Defendant offered to sell Plaintiff quality ventilators fit for use in a mobile ICU, but those ventilators turned out to be out of stock due to high demand. Rather than suggesting an alternative model that could further MHF's mission, Defendant offered up a model that was not fit for use in a mobile ICU. Relying on Avante's expertise, Plaintiff asked Defendant to compare the alternative model ventilator. Defendant stated that the new model was a "better quality" product, but made no mention of the fact that the new model was not intended for use in an ICU setting. Worse still, Defendant sent Plaintiff the wrong hospital beds, which similarly could not be used to further MHF's efforts participate in the global mission against COVID-19. As such, Defendant breached its contract with Plaintiff, and judgment should be rendered in its favor of Plaintiff, as shown further below.

## STATEMENT OF FACTS

Plaintiff hereby incorporates its Statement of Material Facts filed contemporaneously herein reference,

## ARGUMENT AND CITATION OF AUTHORITY

### I. Summary Judgment Standard

A federal district court may grant summary judgment if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *Nash v. Kherimba Facility*

*Service, LLC*, 1:19-CV-590-MHC, 2020 WL 13561585, at *2 (N.D. Ga. Feb. 12, 2020). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The motion should be granted only if no rational fact finder could return a verdict for the non-moving party. *Id.* at 249. When ruling on the motion, the Court should view all the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

When the moving party has the burden of proof at trial, "must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys. in Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (cleaned up).  "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.*

## II. Plaintiff is Entitled to Summary Judgment on its Breach of Contract Claim (Count I)

### A. *Defendant Breached its Contract with Plaintiff by Failing to Procure the Correct Hospital Beds*

The Court should find as a matter of law that the parties agreement required Defendant to procure thirty-six (36) Premio E250 hospital beds and that, by failing to procure these hospital beds, Defendant breached its contract with Plaintiff.

The Purchase Order and Revised Quote provide that Defendant would supply to Plaintiff, among other things, thirty-six(36) Premio E250 hospital beds (SOF, ¶¶ 18, 19) and neither party disputes that the Purchase Order and Revised Quote are component parts of the contract which is the subject of this dispute. (SOF, ¶ 31)

Moreover, correspondence between Mr. Affeldt and Ms. Hampton reaffirms that the agreement between the parties required Defendant procure thirty-six (36) Premio Plus E250 beds to Plaintiff. After signing the Purchase Order on September 24, 2020, Mr. Affeldt immediately emailed the signed copy to Ms. Hampton and, in the body of his email, reconfirmed that "[a]s per my phone call with you yesterday, we are going to purchase all of the equipment listed on the attached quote." (SOF, ¶ 24)  Later that day, Ms. Hampton sent a response email later that day in which she first discussed the payment process and asked Mr. Affeldt about Plaintiff's lead time for the purchased items. (SOF, ¶ _25)  She also noted there was a shortage of Premio E250 beds and suggested two alternative types of

hospital beds that Plaintiff could purchase if it wanted to obtain the beds before a certain date. (*Id.*)

However, Mr. Affeldt testified that he has no recollection of receiving this email from Ms. Hampton. (SOF, ¶ 26). This is consistent with the undisputed fact that Mr. Affeldt never sent an email choosing one of the two alternate beds proposed by Ms. Hampton or otherwise acknowledging any of the statements in Ms. Hampton's email. *Id.* In fact, on October 12, 2020, Mr. Affeldt sent another email *reaffirming* that Plaintiff's agreement with Defendant required Defendant to procure thirty-six (36) Premio E250 hospital beds. (*Id.*) ("After reviewing the size and dimensions of Avante **Premio Plus E250 Electric Hospital bed**, the most efficient and effective way to **get this product to our customer** is to have it direct shipped to their address." (emphasis added)). Ms. Hampton did not respond to Mr. Affeldt's October 12, 20220 email, nor did she send any other emails discussing either of the two "alternative" beds until well after the incorrect beds were delivered. *Id.*

No reasonable jury could find that the parties agreed to anything other than the procurement by Defendant of thirty-six (36) Premio E250 hospital beds and it is undisputed that Defendant failed to procure those beds. (SOF, ¶ 27) Therefore, the Court should find as a matter of law that Defendant breached its contract with Plaintiff.

It is undisputed that $91,800 of the $682,000 that Plaintiff paid to Defendant constitutes payment for thirty-six (36) Premio E250 hospital beds. (SOF, ¶ 19) It is further undisputed that Defendant did not procure thirty-six (36) Premio E250 hospital beds to Plaintiff. (SOF, ¶ 19) This Court should therefore find that as a matter of law, Plaintiff, by paying $91,800 for beds it never received, incurred damages of $91,800, excluding interest, costs and or other damages available in connection with a claim for breach of contract.

B.  ***Defendant Breached its Contract with Plaintiff by Failing to Procure ICU-Complaint Ventilators***

This Court should find as a matter of law that the parties agreement required Defendant to procure thirty-six ventilators that could be used in a mobile ICU setting and that Defendant breached the agreement by failing to procure such ventilators.

In weeks before and after Mr. Affeldt signed the purchase order, he and Ms. Hampton exchanged no fewer than twelve (12) emails under a subject line containing the term "Mobile ICU". (SOF, ¶ 11) Moreover, Ms. Hampton has explicitly admitted that Mr. Affeldt informed her that Plaintiff sought to purchase ventilators and other equipment for use in an ICU setting:

> Q. … **So according to this email, Kyle Affeldt informed you that their current contract is for four mobile ICU facilities, right?**
> A. **Yes.**
> Q. Okay. And that would be for -- that would be four mobile intensive care unit facilities, right?

>    …
>
>    THE DEPONENT:  I would -- I would believe that to be correct.
>
>    BY MR. GOLDBERG:
>
>    Q. Okay.  And he informed you that the contract was with the Texas Division of Emergency Management, right?
>
>    A. Yes.

(SOF, ¶ 12)  (emphasis added).

Moreover, it is undisputed that (a) Mr. Affeldt spoke with Defendant Avante's CEO in the weeks before signing the purchase order and that, during those conversations, Mr. Affeldt conveyed that he sought to purchase medical equipment for use in mobile ICU facilities and Avante's CEO assured Mr. Affeldt that Avante fully understood Plaintiff's needs and requirements (SOF, ¶ 9).  , the parties agreed early on that Defendant would be selling Plaintiff ventilator that could be used in an ICU setting.

On September 13, 2022, Ms. Hampton sent an email under the subject line "RE: 20-0003-585_Mobile Healthcare Facilities - **Mobile ICU** w/ Truck Tractor" (emphasis added) wherein she stated that Defendant needed to revise Plaintiff's quote to replace the PB840 with a Vivo 65, a different ventilator model.  (SOF, ¶ 17) In response (and under the same subject line), Mr. Affeldt asked Ms. Hampton:

>    "**How does [the Vivo 65] compare to the PB840?**"

Doc. Nos. 40-4 at 59; 40-5 at 1. Ms. Hampton then she responded (under the same subject line) by stating:

> **The Vivo 65 is new and also does not require an air compressor, like the PB840. You are saving money and providing a <u>better quality product</u>.**

*Id.* (emphasis added). Thus, after the parties had already agreed that Defendant would sell Plaintiff ventilators for use in a mobile ICU, Ms. Hampton, under a subject line that included the word "Mobile ICU", offered to provide a "better quality" ventilator than the one that was previously discussed. (SOF, ¶ 21) Under these circumstances, no reasonable juror could find that Ms. Hampton's statement constitutes anything other than the parties agreeing that Defendant would procure thirty-six (36) "better quality" ventilators for use in *mobile ICUs*.

This Court should therefore find as a matter of law that Plaintiff violated this agreement when it provided ventilators that could not be used in an ICU setting.

As discussed above, the parties agreed that, in exchange for payment, Defendant would procure to Plaintiff thirty-six (36) ventilators that could be used in an ICU setting and Defendant breached the parties contract when it failed to procure these ventilators. It is undisputed that $360,000 of the $682,000 that Plaintiff paid to Defendant constitutes payment for ventilators. (SOF, ¶ 19). By paying $360,000 for ICU-compliant ventilators it never received, Plaintiff incurred damages of at least $360,000. Plaintiff is therefore entitled to damages in the amount of $360,000.00.

## **CONCLUSION**

For the foregoing reasons, Plaintiff is entitled to judgment as a matter of law against Defendant in the amount of (1) $91,800.00 with respect to its breach of contract concerning the hospital beds and (2) $360,000.00 with respect to its breach of the contract concerning the ventilators.

Respectfully submitted this 31st day of October 2022.

                                        */s/ Brian S. Goldberg*
                                        Brian S. Goldberg
                                        Georgia Bar No. 128007
                                        Brian.Goldberg@fmglaw.com

                                        Leo Kogan
                                        lkogan@fmglaw.com
                                        Georgia Bar No. 569425

                                        *Attorney for Plaintiff Mobile*
                                        *Healthcare Facilities, LLC*

FREEMAN MATHIS & GARY LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
T: (678) 996-9140
F: (678) 236-9154

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing PLAINTIFF'S MOTION  FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 31st day of October, 2022.

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
Brian.Goldberg@fmglaw.com

Leo Kogan
lkogan@fmglaw.com
Georgia Bar No. 569425

*Attorney for Plaintiff Mobile Healthcare Facilities, LLC*

FREEMAN MATHIS & GARY LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
T: (678) 996-9140
F: (678) 236-9154

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT to the Clerk of Court using the CM/ECF system which, will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants, and mailed by United States Postal Service, first-class, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants.

This 31st day of October, 2022.

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
Brian.Goldberg@fmglaw.com

Leo Kogan
lkogan@fmglaw.com
Georgia Bar No. 569425
*Attorney for Plaintiff Mobile Healthcare Facilities, LLC*

FREEMAN MATHIS & GARY LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
T: (678) 996-9140
F: (678) 236-9154