UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MOBILE HEALTHCARE FACILITIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AVANTE HEALTH SOLUTIONS <br><br> Defendant. | Civil Action No. <br> 1:21-CV-04038-SEG |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff Mobile Healthcare Facilities, LLC, pursuant to Local Rule 56.1 of this Court, submits the following statement of material facts as to which it contends there is no genuine dispute, and which entitle plaintiff to summary judgment for $451,800.00, the amount sought in Count I of its complaint. Plaintiffs shows this Honorable Court the following:

1.

Plaintiff Mobile Healthcare Facilities, LLC ("MHF" or "Plaintiff") is a corporation existing and duly organized under the laws of Nevada, and that is registered to do business in the State of Georgia. MHF has its principal place of business located in Powder Springs, Georgia. (Doc. No. 1, ¶ 1.).

2.

Plaintiff is, and at all times relevant to this action was, engaged in the business of providing mobile healthcare products and services to its clients. (*Id.*).

3.

Avante Heath Solutions ("Avante" or "Defendant") is a corporation existing and duly organized under the laws of the State of Delaware and that is registered to do business in the State of Kentucky. Avante is not registered to do business in the State of Georgia. (*Id.*, ¶ 2; Doc. No. 4, ¶ 2).

4.

Avante holds itself out as a premier supplier of both new and used critical care medical equipment, at least some of which is suitable for use in an ICU. (Doc. No. 1, ¶ 8; Doc. No. 4, ¶ 8).

5.

In August 2020, MHF was awarded a purchase order ("TDEM Purchase Order") from the State of Texas Department of Emergency Management ("TDEM") to provide four "turn-key" mobile ICU healthcare facilities stocked with medical equipment for use in combating the COVID-19 pandemic ("Four Mobile ICU Units"). (Doc. No. 1, ¶ 7; Doc. No. 4, ¶ 7; *see also* Doc. No. 44, Depo. Misty Hampton at 31:24-32:1-2 ("Q: …[MHF] stated that they are being funded for this contract by FEMA under the COVID-19 emergency situation, right? A: Yes."); *see*

*also* Doc. No. 43, Depo. Kyle Affeldt at 37:19-38:7 ("Q: And did you have an understanding from the beginning of your interactions with Texas that it wanted both the structures and medical equipment? A: Yes. They wanted a turnkey project because … of the 75 percent involvement with FEMA, they didn't want multiple vendors."); *see* Doc. No. 43-8, Exhibit 65 to Depo. Kyle Affeldt).

6.

In relevant part, the TDEM Purchase Order required MHF provide Four Mobile ICU Units stocked with, among other things, 36 ventilators and 36 electrical hospital beds. (*See* Doc. No. 44-10; *see also* Doc. 43-8, at 9; *see also* Doc. No. 43 at 36:22-37:5 ("[The State of Texas Department of Emergency Management]…told me [MHF] everything they wanted, medical equipment wise. They gave me…a list of [medical equipment] they wanted")

7.

MHF searched for reliable medical equipment supply companies with expertise in the type of medical equipment needed to stock the Four Mobile ICU Units and located Avante as a potential supplier of 36 ventilators and 36 hospital beds needed for the Four Mobile ICU Units. (Doc. No. 43 at 34:16-35:3).

8.

MHF reached out to Avante concerning purchasing medical equipment for the Four Mobile ICU Units and, after some discussions, MHF expressed interest in

purchasing 36 ventilators and 36 hospital beds needed for the Four Mobile ICU Units. (Doc. No. 44 at 21:7-12; 23:15-20) ("Q: [MHF] was interested in buying ventilators from Avante, correct? A: Yes…Q:…They were interested in buying hospital beds as well, right? A: Yes").

9.

MHF communicated its medical equipment needs to Avante via emails between MHF's CEO, Kyle Affeldt and Avante's sales representative Misty Hampton (*See* Doc. Nos. 44-3 through 44-22) as well as telephone calls with both Ms. Hampton and Avante CEO/President Joel Weihe. (Doc. No. 44 at 28:11; Doc. No. 43 at 57:3-59:10 ("Q: And who at Avante said that they fully understood the needs and requirements of MHF? A: Joel [Weihe], because I actually sent him a copy of my Texas contract, and he read the contract. He knew exactly what the project was for and what [] was needed…[and] Misty [Hampton]…I sent her the contract, then I sent it to Joel and actually had a conversation with Joel discussing this project in detail that –and what it was for, and he had an actual copy of my contract with the State of Texas")).

## Avante is Repeatedly Made Aware that MHF Seeks to Purchase Equipment for Use in Four *Mobile ICUs*

Avante was made well-aware that MHF was building Four Mobile ICU Units for the State of Texas Emergency Management on numerous occasions including, but not limited to the following.

10.

On September 8, 2020, Mr. Affeldt sent Ms. Hampton an email wherein he expressly stated that "[MHF's] current contract is for **4 Mobile ICU Facilities**. The contract is with the Texas Division of Emergency Management. They are being funded for this contract by FEMA under the COVID-19 emergency situation" (Doc. No. 44-3; *see also* Doc. No. 44 at 30:11 – 31:13).

11.

Mr. Affeldt and Ms. Hampton exchanged no fewer than twelve (12) emails under a subject heading "20-0003-585_Mobile Healthcare Facilities - **Mobile ICU** w/ Truck Tractor. (*See* Doc. Nos. 9, 12, 13, 14, 15, 17, 18, 19, 20, 22, 25 and 26.) (emphasis added).

12.

Ms. Hampton has also explicitly admitted that Mr. Affeldt informed her that Plaintiff sought to purchase ventilators and other equipment for use in an ICU setting:

Q. … **So according to this email, Kyle Affeldt informed you that their current contract is for four mobile ICU facilities, right?**

A. **Yes.**

Q. Okay. And that would be for -- that would be four mobile intensive care unit facilities, right?

…

THE DEPONENT: I would -- I would believe that to be correct.

BY MR. GOLDBERG:

Q. Okay. And he informed you that the contract was with the Texas Division of Emergency Management, right?

A. Yes.[1]

(Doc. No. 44 at 31:10-22; Doc. No. 44-3; *see also*, Doc. No. 44 at 24:3-6 ("Q: You were aware that Mobile Healthcare Mobile Healthcare Facilities was building these mobile facilities for the State of Texas Emergency Management, correct? A: Yes. I was made aware of that.")).

13.

Mr. Affeldt also provided Ms. Hampton with a copy of the TDEM Purchase Order, which states, on its face, that the "PURCHASE IS IN RESPONSE FOR AN EMERGENCY REQUIREMENT AND IS AUTHORIZED UNDER THE PROVISION OF TEXAS GOVERNMENT CODE, SECTION 418.014 DISATER

---

[1] For presentation purposes only, Plaintiff has omitted from the extracted quotation an objection by Defendant's counsel that relates to whether Ms. Hampton knew what "ICU" meant. Plaintiff does not believe this objection alters the impact of the extracted text.

DECLARATION ISSUED BY GOVERNOR ABBOTT" for four "**Mobile ICU** w/ Truck Tractor" by the "Texas Division of Emergency Management (TDEM)" under "INCIDENT 20-0003 nCoV 2020". (Doc. Nos. 44-9 and 44-10.) (emphasis added).

**Avante Generates a Quote and MHF Signs a Purchase Order**

14.

On September 11, 2020, Avante provided MHF with Quote No. Q015718 (the "Initial Quote") to purchase certain medical equipment, including, but not limited to, thirty-six (36) "Puritan Bennett PB840 Ventilators" ("PB840 Ventilators") and 36 "Avante Premio Plus E250 Electric Hospital Bed[s]" ("Premio Plus E250 Beds") (Doc. No. 1, ¶ 12; Doc. No 4, ¶ 12); *see also* Doc. No. 44-8).

15.

The Initial Quote provided a price of the thirty-six (36) PB840 Ventilators at $10,350.00 each, for a total price of $372,600.00. (*Id.*; *see also* Doc. No. 44 at 37:23-11 (admitted to ventilators price)).

16.

The Initial Quote also provided a price of the 36 Premio Plus E250 Beds at $2,550.00 each, for a total price of $91,800.00. (Doc. No. 44 at 39:11-40:2).

17.

On September 13, 2020, Misty Hampton (sent an email to MHF that the PB840 Ventilators listed in Initial Quote had to be replaced with the Vivo 65 Ventilator. She states in the email as follows:

> **After speaking with our production director, we need to revise your quote to replace the PB840 vent with the Vivo 65 shown here: https://www.breas.com/products/vivo/vivo-65-usa/ I hope to have answers to your questions regarding payment terms and shipping estimate soon.**

(Doc. No. 1, ¶ 16; Doc. No. 4, ¶ 16; Doc. No. 44-13).

18.

Avante sales representative Misty Hampton provided a second quote ("Revised Quote") to MHF for the purpose of substituted the 36 PB840 Ventilators with 36 "Breas Vivo 65 Respiratory Ventilator[s]" ("Vivo 65 Ventilators"). (Doc. No. 44 at 76:16-25; Doc. No. 44-21).

19.

Like the Initial Quote, the Revised Quote listed the purchase of thirty-six (36) Premio Plus E250 hospital beds at a price $2,550.00 each for a total of $91,800. (Doc. 44-8; Depo. Avante 30(b)(6) [Misty Hampton] [Doc. 46] at 59:24 – 60:2). However, for ventilators, the Revised Quote included an updated price of

$360,000.00 for thirty-six (36) Vivo 65 Ventilators at $10,000.00 each. (Doc. No. 44 at 78:7-11; Doc. No. 44-21).

20.

In response, MHF asked Avante the reason for the Revised Quote and replacing the PB840 Ventilators with the Vivo 65. Specifically, Mr. Affeldt asked Avante, "[h]ow does this [Vivo 65] ventilator compare to the PB840". (Doc. No. 44 at 59:13-15; Doc. No. 44-15 at 2).

21.

Avante sales representative Misty Hampton responded that "[f]inding 36 refurbished ventilators of the same model is very difficult due to the current pandemic. The Vivo 65 is new and also does not require an air compressor, like the PB840. You are saving money and providing a **better-quality product**." (Doc. No. 44 at 65:6-13; Doc. No. 44-22 at 3) (emphasis added).

22.

Despite having direct knowledge and information that MHF intended to use the medical equipment purchased in the Four Mobile ICU Units, Avante sales representative Misty Hampton advised MHF that the Vivo 65 Ventilator was a "better quality product" than the PB840 Ventilator, when in fact the Vivo 65 Ventilator was **not** suitable for ICU use. (Doc. No. 1, ¶ 18; Def's First Supp. Resp. to Pl's First Set of Inter., Requests for Prod. Of Doc., and Req. for Ad. at 37, ¶ 1

[Doc. 46-4] ("Defendant admits that as detailed on the Vivo 65 website located at www.breas.com/products/vivo/vivo-65-usa/, the 'Vivo 65 is not intended to be used as a transport or critical care ventilator.'")).

23.

MFH relied upon the expertise of Avante, a global supplier of medical equipment, to provide it with the right medical equipment when they advised that the Vivo 65 was a "better quality product" than the PB840 Ventilator. (Doc. No. 43 at 169:6:10).

24.

On September 24, 2020, MHF executed a purchase order for, among other medical equipment, the purchase of the 36 Vivo 65 Ventilators and 36 Premio Plus E250 Beds (Doc. No. 44-23) and simultaneously remitted a check in the amount of $682,000.00, to Avante. (Doc. No. 44-24). That same day, Mr. Affeldt sent an email to Ms. Hampton attaching a copy of the signed purchase order and the Revised Quote along with a photograph of the check and stating "[a]s per my phone call with you yesterday, we are going to purchase all of the equipment listed on the attached quote." (Doc. No. 44-22).

### Avante Fails to Procure Premio Plus E250 Beds
### as Agreed by the Parties

25.

On the same day that Mr. Affeldt signed the Purchase Order and sent to Ms. Hampton, Ms. Hampton emailed Mr. Affeldt a response. (Doc. No. 43-15). In her response email, Ms. Hampton first thanked Mr. Affeldt for his order and for sending the check. *Id.* She then discussed the payment process. *Id.* Next, she asked about MHF's lead time, noting that items that require manufacturing will take time. *Id.* Finally, Ms. Hampton noted there was a shortage of Premio E250 beds and suggested two alternative types of hospital beds that MHF could purchase if it wanted to obtain the beds before a certain date. *Id.*

26.

After sending the aforementioned email, Ms. Hampton sent no additional emails discussing these "alternative" beds until well after the incorrect beds had already been delivered. (*See generally,* Doc Nos. 44-25 – 44-31, 44-43.). Mr. Affeldt never responded to the aforementioned email from Ms. Hampton, and he testified that he does not recall reading it. (*See* Doc. No. 43 at 182:11 – 183:1). In fact, several weeks later on October 12, 2020, Mr. Affeldt emailed Ms. Hampton stating, among other things, "After reviewing the size and dimensions of Avante **Premio Plus E250 Electric Hospital bed**, the most efficient and effective way to

**get this product to our customer** is to have it direct shipped to their address." (Doc. 44-26).

27.

Subsequently, around December 7, 2020, Avante delivered 36 hospital beds to MHF, but the hospital beds that were supplied were not the Premio Plus E250 hospital beds. Instead, Avante had delivered completely different "SS RetractaBed[s]" to MHF. (Doc. No. 1 ¶ 24; Doc. No. 4 ¶ 24; Doc. No. 44 at 158:4-7 ("Q. To your knowledge, were there any Premio 250 . . . beds ever sent to [MHF]? A. I don't believe so."); *id.* at 155:8 – 20; 156:15 (admitting "they are different beds"); *id.* at 157:18-23 (admitting MHF informed Avante that MHF did not receive the Premio Plus E250 hospital beds); Doc. No. 43 at 175:23 – 176:19).

28.

Specifically, on December 7, 2020, MHF wrote to Avante sales representative Misty Hampton as follows:

> Misty, [w]hat is Avante doing and trying to pull??? I purchased 36 Avante 250 Premio Plus Electrical Hospital Beds! What I received are pieces of crap Med Mizer Retract a Beds….[t]he type of bed and level of quality is not even close.
>
> Here is what I purchased:



Here is what I got:



> Between the wrong vents and now this, my customer FEMA is not happy…[g]et me the right ones immediately…and give me the RMA for return of the vents and these first 9 beds and you have someone come and pick them up.

(Doc. 43-43 at 2).

29.

In response, on December 7, 2020, Avante sales representative Misty Hampton writes in an email as follows:

> Because the hospital beds are a product that we stock and after consulting with management, we have decided to accept their return. We typically offer a full credit or a refund with 40% restocking fee. Management is allowing me to reduce this restocking fee to 20% if you would prefer a refund. We will also deduct the return shipment cost from the return of the beds. There will be two return shipments of the beds: the refusal for delivery of 27 beds

today, and the pickup of the 9 beds which were already delivered.

(*Id.* at 1).

30.

On December 8, 2020, MHF wrote back to Avante sales representative Misty Hampton as follows:

> That is total unacceptable. We did not order the bed you shipped us. We are not going to pay a 20% restock fee for your company trying to commit fraud. I need to know when I will be receiving the beds that I ordered. I also need to know when I will be receiving the RMA for the wrong ventilators?

(*Id.*).

31.

The aforementioned events occurred despite the fact that, as part of Avante's 3(b)(6) deposition, Ms. Hampton testified that this Purchase Order and Revised Quote constitute the agreement between Plaintiff and Defendant and admitted that the purchase order was never updated to reflect a change from the Premio E250 beds. (*See, e.g.,* Doc. No. 46 at 34:2-5 ("The agreement that I'm aware of is the purchase order that they sent to purchase equipment based on the quote that we provided"; *see also, id.* at 60:79 ("Q. And the purchase order was neve updated to reflect any changes in that order, right?  A. To my knowledge, that's correct."). At other points

during Avante's 30(b)(6) deposition, Ms. Hampton testified that emails could also constitute a part of the agreement. (*See generally, id.* at 28 – 36.)

### Avante Fails to Deliver Ventilators Fit for Use in an ICU Setting

32.

After receiving and inspecting the ventilators, on November 30, 2020, TDEM communicated to MHF that the Vivo 65 Ventilators would not be usable in the Four Mobile ICU Units because they are "clearly marked unable to be used in a critical care setting. Unfortunately, we will not be able to use or pay for those. Those are items which would never have been able to be used in a mobile ICU. Those costs will need to be removed." (Doc. No. 43-13 at 2)

33.

After receiving the November 30, 2020 email from TDEM, MHF immediately contacted Avante sales representative Misty Hampton, writing the following:

> I am having a huge problem with the ventilators that you sold me. You sold me the following ventilator 40VIVO65N BREAS VIVO 65 RESPIRATORY VENTILATOR 36.0000. EA 10,0000.0000 360,000.000 My customer [TDEM] is refusing to pay for them since they said "[i]t was brought to our attention that the ventilators you purchased are clearly marked unable to be used in a critical care setting. Unfortunately, we will not be able to use or pay for those. Those are items which would never have been able to be used in a mobile ICU." Is this true? If so, you should have never sold us those since you knew how those were going to be used. If false,

> please provide me with immediate documentation to the contrary. If true, I expect total refund for these items.

(Doc. No. 43 at 164:23 – 167:8; Doc. No. 73).

34.

MHF sent an additional email to Avante sales representative Misty Hampton on the same date as follows:

> Misty, I just went on the Bres website and it states [t]he Vivo 65 is not intended to be used as a transport or critical care ventilator…[a]s I stated in my first email this was for a Mobile ICU…since your company is a major medical equipment supplier, you know that an ICU is "critical care" and the ventilators that you were to supply required critical care. All of the other equipment that you provided us meets that criterion except for these ventilators. Therefore, you need to get with your supplier and force them to accept the return of these items. They have not been used in any aspect and are in their original packaging.

(*Id.* at 1.).

Respectfully submitted this 31st day of October, 2022.

                                                */s/ Brian S. Goldberg*
                                                Brian S. Goldberg
                                                Georgia Bar No. 128007
                                                Brian.Goldberg@fmglaw.com

                                                Leo Kogan
                                                lkogan@fmglaw.com
                                                Georgia Bar No. 569425

                                                *Attorney for Plaintiff Mobile*
                                                *Healthcare Facilities, LLC*

FREEMAN MATHIS & GARY LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
T: (678) 996-9140
F: (678) 236-9154

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing **PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT** to has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 3st day of October, 2022.

                                                         */s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Brian.Goldberg@fmglaw.com

Leo Kogan
lkogan@fmglaw.com
Georgia Bar No. 569425

*Attorney for Plaintiff Mobile Healthcare Facilities, LLC*

FREEMAN MATHIS & GARY LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
T: (678) 996-9140
F: (678) 236-9154

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which, will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants, and mailed by United States Postal Service, first-class, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants.

This 31st day of October, 2022.

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
Brian.Goldberg@fmglaw.com

Leo Kogan
lkogan@fmglaw.com
Georgia Bar No. 569425
*Attorney for Plaintiff Mobile Healthcare Facilities, LLC*

FREEMAN MATHIS & GARY LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
T: (678) 996-9140
F: (678) 236-9154