**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

MOBILE HEALTHCARE
FACILITIES, LLC,

     Plaintiff,

vs.

AVANTE HEALTH SOLUTIONS,

     Defendant.

Civil Action File No.
1:21-cv-4038-SEG

**PLAINTIFF MOBILE HEALTHCARE FACILITIES, LLC'S REPLY**
**BRIEF IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

COMES NOW, Plaintiff Mobile Healthcare Facilities, LLC ("Plaintiff" or "MFH") in the above styled action and files this reply to *Defendant Avante Health Solutions' Response to Plaintiff's Motion for Partial Summary Judgment* ("Defendant's Response"). (Doc. 48). Plaintiff respectfully requests this Court grant its *Motion for Partial Summary Judgment* (Doc. 47) and in support thereof, replies to the arguments of Defendant as follows.

**A.     Avante has failed to refute, and thereby admitted, that the parties' agreement and understanding was for Avante to provide ventilators intended for four mobile intensive care units.**

Defendant futilely attempts to avoid summary judgment by arguing that *only* the purchase order dated September 11, 2020, was the full agreement and understanding of the parties. (*See* Doc. 48, 11). By Defendant's own admissions, and failures to refute material facts, this is simply unsupported by the evidence and

remains factually undisputed. Defendant admits that on approximately August 25, 2020, Mobile Healthcare Facilities secured a $11.35 million contract with the State of Texas ("TDEM Contract") to set up mobile healthcare facilities to combat the COVID-19 pandemic. (Pl. SOMF ¶ 6; *admitted* Avante Resp. to Pl. SOMF ¶ 6). Defendant also admits that MHF reached out to Avante concerning purchasing medical equipment for the TDEM contract. (*See* Avante Resp. to Pl. SOMF ¶ 8). However, Defendant unsuccessfully attempts to argue that Avante supplied exactly what was ordered. (*See* Doc. 48, 11-12) ("MHF nonetheless contracted to receive the Vivo 65. *And it received just that*"). Avante's attempts to completely ignore the vast trove of email and phone communications is fatal to their arguments.

1. *Defendant failed to refute Plaintiff's Statement of Material Fact Number 8*

Defendant failed to directly refutes Plaintiff's Statement of Material Fact Number 8 with concise responses supported by specific citations to evidence (including page or paragraph number). MHF reached out to Avante concerning purchasing medical equipment for the Four Mobile ICU Units and, after some discussions, MHF expressed interest in purchasing 36 ventilators and 36 hospital beds needed for the Four Mobile ICU Units. (Pl. SOMF ¶ 8). Avante's response to this material fact is that it is "denied as characterized", but Avante simultaneously "admits that MHF reached out to Avante concerning purchasing medical equipment and that MHF ordered specific medical equipment, which it received." (*See id*).

Avante does not provide any specific citation to evidence, or any citation at all, which directly refutes MHF's material fact. As such Plaintiff's Statement of Material Fact Number 8 is admitted. *See* N.D. Ga. LR 56.1(B)(2)(a)(2).

### 2. *Defendant failed to refute Plaintiff's Statement of Material Fact Number 9*

Avante has also failed to directly refute Plaintiff's Statement of Material Fact Number 9. MHF communicated its medical equipment needs to Avante via emails between MHF's CEO, Kyle Affeldt and Avante's sales representative Misty Hampton as well as telephone calls with both Ms. Hampton and Avante CEO/President Joel Weihe. (Pl. SOMF ¶ 9). While Avante admits that Plaintiff supplied Avante with its contract with TDEM, it "denies Mr. Affeldts characterization that Mr. Weihe somehow 'fully understood the needs and requirements of MHF' simply because MHF supplied Avante with a generic, nondescript contract between MHF and TDEM." (*See* Avante Resp. to Pl. SOMF ¶ 9). Avante's denial does not "directly" refute Plaintiff's Statement of Material Fact Number 9, and for two reasons.

First, Defendant does not, and cannot, directly refute the testimony of Kyle Affeldt's conversation with Joel Weihe, former CEO of Avante. This is because Joel Weihe no longer works at Avante and has provide no testimony to refute Kyle Affeldt's testimony. Unlike Defendant, Plaintiff, has supported its material fact with direct sworn deposition testimony about the conversations between Mr. Affeldt and

Mr. Weihe. (*See* Doc. No. 43 at 57:3-59:10) ("I sent [the TDEM contract] to Joel [Avante CEO] and actually had a conversation with Joel [Avante CEO] discussing this project in detail that —and what it was for, and he had an actual copy of my contract with the State of Texas"). Avante has not provided any direct refutation of this evidence. Earlier in the case, Plaintiff sought to depose Mr. Weihe. Plaintiff's counsel was informed by Avante's counsel that Avante could not locate Mr. Weihe. Mr. Weihe's testimony is the <u>only</u> testimony that could directly refute one-on-one conversations between Mr. Affeldt and Mr. Weihe (CEO of Avante at the time). Accordingly, Avante has failed to directly refute this material fact, and for this reason alone, Plaintiff's Statement of Material Fact Number 9 is deemed admitted. *See* N.D. Ga LR 56.1(B)(2)(a)(2).

Second, Defendant attempts to gloss over the contents of the TDEM contract by woefully mischaracterizing it as a "generic, nondescript contract". Of course, Avante's has admitted that the TDEM contract was provided to them by MHF. (*See* Avante Resp. to Pl. SOMF ¶ 9). Even a cursory glance at the TDEM contract reveals language at the top of the contract in all capital letters as follows:

THIS PURCHASE IS IN RESPONSE FOR AN EMERGENCY REQUIREMENT AND IS AUTHORIZED UNDER PROVISIONS OF TEXAS GOVERNMENT CODE, SECTION 418.014 DISASTER DECLARATION ISSUED BY GOVERNOR ABBOT.

(Hampton Depo. Exhibit 10). Further, and more importantly, the alleged "generic, nondescript" contract also plainly contains a *description* that says, "Mobile ICU w/ Truck Tractor". (*See id.*). So, either Avante is *grossly* negligent due to their failure to review the TDEM contract, they lied to Mr. Affeldt about understanding his needs, or they are just downright dishonest. Either way, Avante's denial of Plaintiff's Statement of Material Fact Number 9 cannot be accepted.

3. *Defendant's admission to Plaintiff's Statement of Material Facts Number 10 through 13 undisputedly show the agreement of the parties and Avante's assent to provide ventilators for use in four mobile ICU units.*

Defendant admits to receiving the email communications described in Plaintiff's Statement of Material Facts Number 10 through 14 which further demonstrates Avante agreed to provide ventilators for use in four mobile intensive care units. The admitted emails undisputed show that Plaintiff expressed its needs to Avante such that "MHF's current contract is for 4 Mobile ICU Facilities…[and that] [t]he contract is with the Texas Division of Emergency Management…being funded [by] FEMA under the COVID-19 emergency situation." (Pl. SOMF ¶ 10; *see* Avante Resp. to Pl. SOMF ¶ 10) ("Avante admits that this email was sent to Ms. Hampton…"). Defendant responded that it "denied as characterized" but the email communication speaks for itself. There is no dispute about its contents.

Defendant does not deny that Mr. Affeldt and Ms. Hampton exchanged no fewer than twelve (12) emails under the subject heading "20-003-585_Mobile

Healthcare Facilities – Mobile ICU w/ Truck Tractor." (Pl. SOMF ¶ 11; *see* Avante Resp. to Pl. SOMF ¶ 11). Again, Defendant responded that it "denied as characterized", but again the email communications speak for itself. There is no dispute about its contents of the communications.

Defendant has not directly refuted that Ms. Hampton explicitly admitted that Mr. Affeldt informed her that Plaintiff sought to purchase ventilators and other equipment for use in an ICU setting." (Pl. SOMF ¶ 12; *see* Avante Resp. to Pl. SOMF ¶ 12). Avante responds again "denied as characterized" but admits that "[t]he evidence cited shows that the current contract between TDEM and MHF was for four mobile intensive care unit facilities." (*See id*.)

Defendant has admitted that Mr. Affeldt also provided Ms. Hampton with a copy of the TDEM Purchase Order, which states, on its face, that the "PURCHASE IS IN RESPONSE FOR AN EMERGENCY REQUIREMENT AND IS AUTHORIZED UNDER THE PROVISION OF TEXAS GOVERNMENT CODE, SECTION 418.014 DISATER DECLARATION ISSUED BY GOVERNOR ABBOTT" for four "Mobile ICU w/ Truck Tractor" by the "Texas Division of Emergency Management (TDEM)" under "INCIDENT 20-0003 nCoV 2020" (Pl. SOMF ¶ 13; *see* Avante Resp. to Pl. SOMF ¶ 13). Again, Defendant only responds "denied as characterized" but admits that Avante received the TDEM contract with the aforementioned language clearly identifying the scope of the project.

The plethora of email and telephone communications show undisputedly that the parties' agreement and understanding was for Avante to provide ventilators that could be used in four mobile intensive care units.  As such, Plaintiff's Partial Motion for Summary Judgment should be granted on its claim for breach of contract.

**B.    Avante failed to establish that MHF assented to different hospital beds.**

Under Georgia law, if a contract is subject to the statute of frauds, then a modification must also satisfy the statute.  O.C.G.A. § 11-2-209(3). "[A] contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. O.C.G.A. § 11-2-201(1).

Here, the contract was subject to the statute of frauds because it was for the sale of goods for the price of $500.00 or more. Avante admits that "[o]n September 11, 2020, Avante provided MHF with Quote No. Q015718 (the "Initial Quote") to purchase certain medical equipment, including, but not limited to, thirty-six (36) "Puritan Bennett PB840 Ventilators" ("PB840 Ventilators") and 36 "Avante Premio Plus E250 Electric Hospital Bed[s]" ("Premio Plus E250 Beds")." (Pl. SOMF ¶ 14; *see* Avante Resp. to Pl. SOMF ¶ 14). Avante has also admitted that "Avante sales representative Misty Hampton provided a second quote ("Revised Quote") to MHF

which also provided for the purchase of purchase of thirty-six (36) Premio Plus E250 hospital beds. (Pl. SOMF ¶ 18, 19; *see* Avante Resp. to Pl. SOMF ¶ 18, 19).

Because the contract was subject to the statute of frauds, the contract was incapable of oral modification. *See* O.C.G.A. § 11-2-209(3). Ms. Hampton emailed Mr. Affeldt that there was a shortage of Premio E250 beds and suggested two alternative types of hospital beds (*see id* ¶ 25), but MHF never assented to those changes in writing. "After sending the aforementioned email, Ms. Hampton sent no additional emails discussing these "alternative" beds until well after the incorrect beds had already been delivered." (Pl. SOMF ¶ 26; *see* Avante Resp. to Pl. SOMF ¶ 26). Avante claims that Ms. Hampton received "verbal approval" for the change in the hospital beds. However, verbal approval is insufficient to modify a sale of goods contract that is subject to the statute of frauds. *See* O.C.G.A. § 11-2-201; *see also See* O.C.G.A. § 11-2-209(3).

## C.    Defendant did not accept the beds nor "use" them.

Defendant attempts to argue that Plaintiff accepted the nonconforming beds and "used them in an act inconsistent of its alleged rejection." (Doc. 48, 13).

First, Plaintiff certainly never accepted or assented to any modification in the contract because it promptly notified Avante of the nonconforming goods. *See* O.C.G.A. § 11-2-206. ("…a shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only

as an accommodation to the buyer."). Avante admits that around December 7, 2020, Avante delivered 36 hospital beds to MHF, but the hospital beds that were supplied were not the Premio Plus E250 hospital beds. Instead, Avante had delivered completely different "SS RetractaBed[s]" to MHF. (Pl. SOMF ¶ 27; *see* Avante Resp. to Pl. SOMF ¶ 27). On or around the same day, Plaintiff notified Avante that it had sent the wrong beds. (Pl. SOMF ¶ 28; *see* Avante Resp. to Pl. SOMF ¶ 28). Notably, Avante does not deny that Plaintiff notified Avante that it received the wrong beds, but merely asserts that Statement of Material Fact Number 28 is "denied as characterized". The email notification speaks for itself. ("I purchased 36 Avante 250 Premio Plus Electrical Hospital Beds! What I received are pieces of crap Med Mizer Retract a Beds….[t]he type of bed and level of quality is not even close." (*See id*). Avante does not directly refute the statement of fact with any specific citation to evidence, so it is admitted.

Defendant also argues that "MFH's using the beds on its website…is an act which is inconsistent with any alleged rejection of such goods." (Doc. 48, 13-15). Defendant cites to *Gill v. Blue Bird Wanderlodge*, 5:02-CV-328-2(CAR), 2004 WL

5311476, at *1 (M.D. Ga. Feb. 24, 2004), for the proposition MHF somehow "re-accepted" the three hospital beds that it *displayed* on its website, but not used.[1]

Georgia law allows a revocation after acceptance when the nonconformity substantially impairs its value and there is a reasonable assumption that its nonconformity would be cured and it has not been seasonably cured." O.C.G.A. § 11-2-608. Kyle Affelt, CEO of MHF, testified that MHF never used the beds. (Doc. 43 at 211:17). He also testified that the beds were not used for their intended purpose (patient medical care), but instead merely temporarily *displayed* due to the absence of the agreed-upon beds. (*Id.*). More particularly, Mr. Affeldt testified "[a]nd you can see those were the beds [Retractabeds] that we did <u>not</u> order that showed up. We set [the three Retractabeds] up temporarily, so the director was going to come in and look at the setup. That's all we had. We didn't have those other beds [Premio E250]" (*Id.* at 209:18-210:1). Essentially, MHF was forced to display *three* beds that it did not order from Avante because of Avante's massive screw up. Avante now argues that Defendant is not entitled to summary judgment because it was forced to use the Retractabeds as a temporary *display* to show MHF's client what the mobile intensive care unit would *eventually* look like—albiet with the wrong beds in place.

---

[1] Avante erroneously claims 9 beds were displayed on MHF's website, but Kyle Affeldt testified there were only three. (*See* Doc. 43 at 220:10-12). Avante provides no evidence to dispute this fact.

Defendant's argument is unsupported by law or the facts of this case. Accordingly, Plaintiff's Partial Motion for Summary Judgment should be granted.

**D.    Plaintiff was not required to mitigate damages because the nonconforming ventilators and hospital beds are nonperishable.**

Avante argues that "[e]ven if Avante had failed to supply what it agreed upon—which it did not—MHF sat on the ventilators for over a year in an environment where the entire world was in a critical shortage of ventilators."[2] (Doc. 48, 16-17). Avante claims MHF has done nothing by way of attempting to re-sell the ventilators…[n]or did it ever attempt to donate the ventilators during the height of COVID-19."[3] (*Id.*, 17). However, Defendant's argument is flawed as Plaintiff was not required to mitigate its damages with respect to non-perishable goods pursuant to O.C.G.A. 11-2-603.

Under Georgia law, "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." O.C.G.A. § 11-2-602. After rejection, the buyer must follow any reasonable instructions of the seller as to any goods in the buyer's possession or control, and in the absence of such instructions sell for the seller's account any goods that are *perishable* or threaten to decline in value speedily. O.C.G.A. § 11-2-603(1). With respect to *nonperishable* goods [as is the case here], if the seller gives no instructions within a reasonable time after notification of rejection, the buyer may store the goods at the seller's expense,

---

[2] Defendant ignores the undisputed fact that the ventilators in question were not fit for intensive care use.

[3] Again, the ventilators in question could not be used for intensive care purposes.

return them to the seller, or resell them for the seller's account, as above. O.C.G.A. §
11-2-604. "Such actions is not acceptance or conversion." *Id.* Georgia law does not
*require* a buyer to resell nonconforming goods. *See id.*

Here, immediately after receiving the nonconforming goods, it is undisputed that
Plaintiff attempted to return both the SS RetractaBeds and the Vivo 65 Ventilators, but
Plaintiff refused to accept their return. (Pl. SOF ¶ 25; *admitted* Def. Resp. to Pl. SOF ¶
25; see also Doc. No. 46 at 58:14 – 59:15; 61:14 – 62:4) ("[T]he return of the ventilators
was refused [by Avante leadership]…"I'm aware that Kyle [MFH] wanted to return the
ventilators and the RetractaBeds and that the ventilator return was refused…[a]nd the
RetractaBeds, we were going to --- with a restocking fee."); *see also* Doc. 43 at 176:3-
19 ("Look at that bed [Premio] [, and now] Look at the next bed [Retractabed]… It ain't
even close."); *id.* at 179:3-8) ("Q: You say they didn't belong to you, but you have been
holding them for two years now? A: Yeah, because I kept saying, Avante, when are you
going to take these back?"); as to the storage location of 9 of the nonconforming hospital
beds, *id.* at 179:13-19 ("Q: So you believe you paid for 36 beds? A. Yes, and I have
nine of those sitting in STRAC warehouse, the other 27 Avante's had for two years and
they have not even reached out to give me any money back on them."); as to the storage
location of the nonconforming ventilators, see *id.* at 78:10-15 ("Q: Have those
ventilators been anywhere else other than the Brewco Marketing warehouse? A: No.
They're still sitting there, and I saw them just a couple of weeks ago when I was there.").

It is also undisputed that Plaintiff stated the particular defect with respect to the hospital beds [being the wrong beds ordered] and the ventilators [being not ICU-compliant]. (Pl. SOMF ¶ 28, 33, 34; *admitted* Avante Resp. to Pl. SOMF ¶ 28, 33, 34). Regardless, there is no evidence proffered by Defendant that Defendant ever "made a request in writing for a full and final written statement of all defects or on which the buyer proposes to rely." See O.C.G.A. § 1-2-605(1).  There is no dispute that Defendant immediately rejected 27 of the nonconforming hospital beds, but that 9 of the beds were sent to a different location, and thus were rejected at a later time. (Doc. 43 at 179:13-19; *see also id* at 216:20 – 217:4) ("…Why would I keep something I didn't order? Q: Well, you kept it for two years. A … no, I didn't. I kept nine of them. I sent the other 27 back immediately. And the only reason why I haven't sent the others back is I'm waiting for Avante to give me approval to send them back."). There is also no dispute that Plaintiff has been safely storing the rejected nonconforming ventilators, and 9 hospital beds. (*Id*. at 78:10-15; *see also id*. at 179:13-19).

Plaintiff has been patiently awaiting and Avante to pick up the nonconforming goods that it erroneously supplied. As such, Defendant's argument fails as a matter of law, and summary judgment should be granted in favor of Plaintiff.

**E.    Plaintiff offered evidence of damages.**

In a last-ditch effort to avoid summary judgment, Defendant argues that "MHS has also failed to establish its claim for damages." (Doc. 48, 17-18). Avante admits that

on September 24, 2020, MHF executed a purchase order for, among other medical equipment, the purchase of the 36 Vivo 65 Ventilators and 36 Premio Plus E250 Beds (Doc. No. 44-23) and simultaneously remitted a check in the amount of $682,000.00, to Avante. (Doc. No. 44-24). (Pl. SOMF ¶ 24; *admitted* Avante Resp. to Pl. SOMF ¶ 24). Avante also admitted also that the same day, Mr. Affeldt sent an email to Ms. Hampton attaching a copy of the signed purchase order and the Revised Quote along with a photograph of the check and stating "[a]s per my phone call with you yesterday, we are going to purchase all of the equipment listed on the attached quote." (Doc. No. 44-22). (*Id.*). Avante admits that on the same day that Mr. Affeldt signed the Purchase Order and sent to Ms. Hampton, Ms. Hampton emailed Mr. Affeldt a response. (Doc. No. 43-15). In her response email, Ms. Hampton first thanked Mr. Affeldt for his order and for sending the check. *Id.* She then discussed the payment process. (Pl. SOMF ¶ 25; *admitted* Avante Resp. to Pl. SOMF ¶ 25).

There is not dispute that Avante accepted the $682,000.00 check payment. (*See* Doc. 44 at 86:23 – 87:4 ("Q: Total Price is listed as $682,000.00, right? A: Correct; Q: It shows or lists, Paid as per Check number 1588, right? A: Correct; Q: And it's signed by Kyle Affeldt, right? A: Right"); *see also id.* at 98:25 – 99:9 ("Q: So it looks like Kyle had paid for everything, all of the medical equipment. Nothing was due. Nothing was outstanding, right? A: According to Crystal's response, the invoice that he received was paid."). Plaintiff   has   established   that   it   paid

$682,000.00 to Defendant. This is undisputed by the parties. Of those funds, it is undisputed that the Revised Quote shows that the cost of the thirty-six (36) Premio Plus E250 hospital beds was $91,800.00. (Pl. SOMF ¶ 19; *admitted* Avante Resp. to Pl. SOMF ¶ 19). It is also undisputed that the Revised Quote shows that the cost of the thirty-six (36) Vivo 65 Ventilators was $360,000.00. (*Id.*).

Accordingly, because Plaintiff has established it is entitled to summary judgment on the issues of breach of contract, it is entitled to its damages in the amount that it paid for the nonconforming goods in the amount of $451,800.00.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully submitted this 2nd day of December, 2022.

/s/ Brian S. Goldberg

Brian S. Goldberg
Georgia Bar No. 128007
Brian.Goldberg@fmglaw.com

FREEMAN MATHIS & GARY LLP          Leo Kogan
100 Galleria Parkway, Suite 1600          lkogan@fmglaw.com
Atlanta, GA 30339-5948          Georgia Bar No. 569425
T: (678) 996-9140
F: (678) 236-9154          *Attorney for Plaintiff Mobile Healthcare Facilities, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing

**PLAINTIFF MOBILE HEALTHCARE FACILITIES, LLC'S REPLY BRIEF**

**IN SUPPORT OF PARTIAL SUMMARY JUDGMENT** has been prepared in

accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

Respectfully submitted this 2nd day of December, 2022.

*/s/ Brian S. Goldberg*
Brian S. Goldberg
Georgia Bar No. 128007
Brian.Goldberg@fmglaw.com

FREEMAN MATHIS & GARY LLP      Leo Kogan
100 Galleria Parkway, Suite 1600      lkogan@fmglaw.com
Atlanta, GA 30339-5948      Georgia Bar No. 569425
T: (678) 996-9140
F: (678) 236-9154      *Attorney for Plaintiff Mobile*
      *Healthcare Facilities, LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day electronically submitted the foregoing **PLAINTIFF MOBILE HEALTHCARE FACILITIES, LLC'S REPLY BRIEF IN SUPPORT OF PARTIAL SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which, will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants, and mailed by United States Postal Service, first-class, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants.

Respectfully submitted this 2nd day of December, 2022.

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
Brian.Goldberg@fmglaw.com

FREEMAN MATHIS & GARY LLP          Leo Kogan
100 Galleria Parkway, Suite 1600          lkogan@fmglaw.com
Atlanta, GA 30339-5948                        Georgia Bar No. 569425
T: (678) 996-9140
F: (678) 236-9154                                  *Attorney for Plaintiff Mobile Healthcare Facilities, LLC*